IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES SCOTT, SR. )
Kansas City, MO. 64138, )
 )
             Plaintiff, )
 )
vs. )
 )  Case No.: 2:16-cv-2831-JAR-JPO
 )
COWLEY DISTRIBUTING, INC. )
9605 Dice Lane, Lenexa KS. 66215 )  DEMAND FOR
 )  JURY TRIAL
             Defendant.)

FILED
DEC 23 2016
TIMOTHY M. O'BRIEN CLERK
By_____Deputy

## COMPLAINT TITLE VII

      COMES NOW Plaintiff, James Scott, Sr., and for my causes of action against Defendant alleges and states the following:

## NATURE OF THE CLAIM

      1.    I seek declaratory and injunctive relief and monetary damages to redress the deprivation of rights accorded to me pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e), *et seq.*, for employment discrimination on the basis of race, color and religion.

      2.    I am a qualified employee who was damaged as a result of Cowley Distributing, Inc.'s ("Cowley") discriminatory employment policies and practices.

      3.    I have had the terms and/or conditions of my employment affected in one or more of the following ways:

1

a. Pursuant to Defendant's centralized pattern and practice of discrimination, I have been denied promotional opportunities extended to similarly situated or less qualified Caucasian employees;

b. Pursuant to Defendant's centralized pattern of discrimination, I am subjected to a work environment that is racially hostile;

c. Pursuant to Defendant's centralized pattern and practice of discrimination, I am subject to job requirements which are materially different from those imposed on similarly situated Caucasian employees;

d. Pursuant to Defendant's centralized pattern and practice of discrimination, I am harassed and disciplined for alleged offenses in which similarly situated Caucasian employees are not;

e. Pursuant to Defendant's centralized pattern of discrimination, I suffered retaliation for filing a Title VII employment complaint on the basis of my religion;

f. Pursuant to Defendant's centralized pattern of discrimination, I was forced to endure offensive objects that are considered a part of my employment; and

g. Pursuant to Defendant's centralized pattern of discrimination, I am wrongfully accused of committing workplace violations.

## PARTIES

4. I, the Plaintiff James Scott, Sr., am an African American male who resides in Kansas City, Missouri.

5. The Defendant is an employer, as defined in 42 U.S.C. Section 2000(e), licensed to do business in the State of Kansas at the address described above.

2

## JURISDICTION AND VENUE

6. This action is brought and jurisdiction lies pursuant to 42 U.S.C. Section 2000e5.

7. Venue is proper in this Court inasmuch as the Defendant has offices, conducts business and can be found in the District of Kansas, and the cause of action has arisen and occurred in the District of Kansas.

8. This Court has subject matter jurisdiction over my complaint.

9. I have timely filed a written complaint of discrimination with the Equal Employment Opportunity Commission and received a right-to-sue letter, marked Exhibit "A", a true and correct copy of which is attached hereto. All conditions precedent to the institution of this lawsuit has been fulfilled.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

10. I was hired by defendant Cowley dba The News Group as a magazine delivery driver approximately May of 2009.

11. Cowley bought out my former employer Anderson News dba The News Group (Anderson) who hired me in May 2004 as a magazine delivery driver.

12. There was an agreed upon arrangement between myself and Anderson that due to my religious convictions, I would not handle pornographic material and that I needed to have one Friday off per year to attend an annual religious convention. Anderson wholeheartedly agreed.

13. Despite my vehement objections, Cowley had me delivering XXX pornographic material citing "I needed to meet them half way."

3

14. Despite my numerous failed attempts (since 2009) to meet with the owner, Mr. John Cowley, he has refused to talk to me.

15. Approximately early June 2016, I met with the General Manager and the Fleet Manager and I was told that the deal I made with Anderson to not touch pornographic material was null and void with Cowley.

16. On approximately March 31, 2016, I was called in to a disciplinary meeting and was written up for workplace violations.

17. One of the violations pointed out was the fact that the GPS tracking system showed that I had attended a Memorial Observation. This would be equivalent to Easter.

18. I explained to my supervisor what the celebration was about and asked him to rethink the write-up.

19. Approximately mid-April 2016, I put together a 24 page grievance with approximately eleven (11) exhibits. The owner, the HR department, The General Manager (GM) and the Fleet Manager (FM) all read the document.

20. I asked that the unwarranted write-up be removed from my file. The GM said that it would be. This was June 2016.

21. The write up is still in my file.

22. In the June 2016 meeting with the GM and FM I addressed an object that reminded me of a noose that was locked around my GPS system. I related how the object reminded me of the lynching of my mother's uncle and the picture that was put on my high school locker of two black men being hung while people pointed and laughed and the Caucasian student who called me the n word. I asked that it be removed.

4

23. In my **strongly** worded grievance, regarding the lock around my GPS device, I used the words: Abominable, Atrocious, Cuff-like, Deplorable, Disparate, Egregious, Illegal, Negative, and Shackle-like.

24. I was also informed during the meeting that I was the **only** driver in the division who had that lock put around his GPS device.

25. The GPS device was suppose to be in each driver's vehicle for a three month rotation.

26. I was informed that I was the **only** driver who had the GPS system put in place for an additional three (3) months.

27. Despite my strongly worded grievance, relaying written and verbal true life stories of lynching's, being called the n word and how egregious I felt the lock was, they still left the lock around my GPS tracking device.

28. The reason I was told the lock was put on is because the GPS NexTraq readout stated that my GPS device allegedly came loose over the weekend.

29. An allegation that I categorically denied!

30. GPS NexTraq readout stated that the GPS device of a Caucasian driver came loose. He was given a courtesy call and no lock was put around his device.

31. Despite GPS protocol of "Only" monitoring "During Work Hours" the immovable lock was placed around my device regardless.

32. Despite GPS protocol of "Tracking employees during non-work hours can be an invasion of the employee's privacy" the secured lock was placed around my device regardless.

5

33. During the June 2016 meeting with the GM and FM, I explained how past and present African American employees felt that a supervisor was racist.

34. The GM said that he would talk to him.

35. Approximately early to mid-November 2016, the aforementioned supervisor, whom the GM said that he would talk to, stated to me "We like to keep the blacks separate, right James!"

36 Not believing the statement that had I just heard, I pretended as if I didn't hear it. At which point he repeated it again.

37. The supervisor was explaining to a Caucasian employee how to separate totes on the warehouse dock. Some of the totes are black. The supervisor made this statement initially to the Caucasian employee and then chose to include me into the conversation. The Caucasian employee, who was also in disbelief, said right then and there, that the comment was inappropriate.

38. In the June 2016 meeting, I made it known that I didn't mind at all, the owner hiring his family members, and creating jobs for past employees (i.e. FM) but could I at least get an interview for an upper level management job?

39. I pitched to the GM the desperate need for some type of oversight for the racial tension and conditions at Cowley. I suggested he talk to the owner about a job for me like an EEOC compliance ombudsman or something of that nature.

40. He got back to me and said that the owner declined my submission.

41. Despite numerous attempts to open up a dialogue with the owner, he refuses to talk to me.

6

42. Approximately eight (8) Caucasian, Cowley employees' social media dialogue was discovered. Excerpts of the dialogue stated:

43. "I didn't buy a color TV to watch n*gg*rs on it!"

44. "I laugh(ed) way to hard at this one."

45. Speaking of an African American employee of Cowley: "You should nail him to a tree then light the tree on fire."

46. Again speaking of the same African American employee: "If (employees' nickname) doesn't get curb stomped into oblivion, then draped with my Kriegsmarine flag, then it's no good."

47. Kriegsmarine: The navy of Nazi Germany from 1935 to 1945. –Wikipedia.

48. When the African American employee brought these incendiary posts to the GM's attention, the GM dismissively replied, "What do you want me to do?"

49. The GM did absolutely nothing until the employee got the Police involved.

50. Cowley's offices in Lenexa and Jefferson City have ZERO African American representation in their upper corporate structure.

# COUNT I
# TERMS AND CONDITIONS/HOSTILE WORK ENVIRONMENT

51. Plaintiff hereby incorporates paragraphs 1-50 of the Complaint by reference as if fully set forth herein.

52. Defendant has maintained a pervasive and vile atmosphere perpetrating discriminatory treatment of African American employees. Plaintiff has been subjected to a hostile work environment.

53. In addition to the hostile work environment, Defendant has discriminated against me in the other terms and conditions of my employment. I was subjected to job terms and conditions different than those of similarly situated Caucasian employees.

54. Plaintiff has been damaged by Defendant's conduct.

55. Defendant's conduct constitutes intentional discrimination with malice against Plaintiff.

56. Defendant's conduct constitutes disparate treatment of and has a disparate impact on African American employees.

57. As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered damages, including but not limited to emotional and mental distress.

58. Plaintiff is also entitled to punitive damages in an amount that will punish Defendant and deter Defendant and others from like conduct.

# COUNT II
# RELIGIOUS DISCRIMINATION

59. Plaintiff hereby incorporates paragraphs 1-58 of the Complaint by reference as if set forth herein.

60. I filed an EEOC Complaint approximately early 2009, due to the fact that I was threatened with termination if I attended my Religious Convention. I didn't go.

61. Since Cowley has taken over I was made to deliver pornography despite my complaints.

62. I was told that whatever agreement that I made with Anderson News was no good with Cowley.

63. The most important yearly event for our organization is the death of Christ and I was written up partly for going to the Memorial during my work time.

64. Plaintiff has been damaged by Defendant's conduct.

65. Defendant's conduct constitutes disparate treatment of African American employees which I am one.

66. Defendant's actions set forth above constitute an intentional pattern and practice of discrimination based on Plaintiff's religion.

67. As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered damages, including but not limited to, economic losses, emotional and mental distress.

9

# COUNT III
# RETALIATION

68. Plaintiff hereby incorporates paragraphs 1-67 of the Complaint by reference as if fully set forth herein.

69. Defendant has also exhibited a pattern of retaliation designed to intimidate me and break me down. Unwarranted write-ups. Writing me up for nonexistent issues and shielding similarly situated Caucasian employees for deserved write ups.

70. When I asked in the June 2016 meeting why is it that I'm treated so differently? There was no answer.

71. My supervisor complains consistently regarding my work. Telling me I'm costing the company money. Trying to discourage me from working at a high level.

72. By virtue of the aforesaid acts, Defendant has engaged in retaliation in violation of 42 U.S.C. ss 1981.

73. I attempted incessantly to acquire answers for my disparate treatment, but to no avail.

74. Plaintiff has been damaged by Defendant's pattern and practice of retaliation.

75. Defendant's retaliatory conduct constitutes intentional discrimination with malice against the Plaintiff.

76. Defendant's retaliatory conduct constitutes disparate treatment of African American's such as myself and Defendant's retaliatory conduct has a disparate impact on African American employees, including Plaintiff.

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

1. Enter a judgment pursuant to jury verdict declaring that the acts and practices of Defendant complained of herein are in violation of the laws of the United States.

2. Grant Plaintiff equitable relief enjoining Defendant from discriminatory and/or retaliatory acts and practices, setting forth specific programs and procedures Defendant must follow and monitoring Defendant's compliance with anti-discrimination/anti-retaliation laws along with a grant of such further, detailed injunctive relief as the Court deems necessary and proper.

3. Award Plaintiff, pursuant to jury verdict, nominal and punitive damages.

4. Pursuant to jury verdict, award Plaintiff economic damages, lost wages including without limitation, compensation differential that would have been accorded Plaintiff absent the illegal discrimination/retaliation.

5. Pursuant to jury verdict, award Plaintiff non-economic, compensatory and other damages suffered due to Defendant's illegal discrimination/retaliation.

6. Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees.

Respectfully submitted,

*James Scott, Sr.*

James Scott, Sr.
P.O. Box 11543
Kansas City, MO. 64138

*I designate Kansas City, Kansas as my place for trial*

*12-23-16  James Scott, Sr.*